|  | : |  |
|---|---|---|
| JAMES CALHOUN, | : |  |
|  | : | Civ. No. 16-4100 (FLW) |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| WILLIAM BONDS, et al., | : |  |
|  | : |  |
| Respondents | : |  |
|  | : |  |

**FREDA L. WOLFSON, U.S.D.J.**

## I.    INTRODUCTION

Petitioner James Calhoun ("Petitioner"), is proceeding *pro se* in this habeas proceeding (the "Petition") under 28 U.S.C. § 2254.  (ECF No. 1.)  Respondents William Bonds and the Attorney General of the State of New Jersey (collectively, "Respondents"), have filed an answer to the Petition.  (ECF No. 8.)  Petitioner filed a reply.  (ECF No. 19.)  Having considered the parties' submissions, and for the following reasons, the Petition is denied.

## II.    BACKGROUND

The facts underlying Petitioner's conviction, as established at a jury trial, were set forth by the New Jersey Superior Court, Appellate Division, on Petitioner's direct appeal:

> On October 3, 2004, between approximately 7:30 p.m. to 8:00 p.m., then twenty-one year old S.M. was visiting her boyfriend who was working at a Walgreens pharmacy in Lakewood.  As she exited the store intending to go to her car, S.M. encountered defendant who stepped in front of her, grabbed her and held a kitchen knife to her neck.  Defendant forced S.M. to surrender her car keys and get into the backseat of her vehicle where he bound her with clothing.  He drove the car a short distance, pulled over on an unpaved portion of Vine Street and entered the backseat.  While S.M. was bound, defendant removed her pants and placed his mouth on her vagina

and rectum. S.M. was crying, but her pleas for defendant to stop were ignored. S.M. testified defendant proceeded to penetrate her with his penis, both anally and vaginally, each for approximately fifteen minutes. Defendant then lit a cigarette he shared with S.M., dressed her and returned to the front seat to continue driving. S.M. remained bound in the rear seat of her vehicle.

Defendant stated he needed money and S.M. gave him access to her bank account personal identification number from which he withdrew $100. Afterward, defendant threatened S.M. to not think about escaping, bound her mouth, locked the car and went to a store. Defendant returned and drove to Martin Luther King Boulevard to talk to others. He left the car, locking it from the inside and took the keys and S.M.'s cell phone. As defendant continued driving that evening, he stopped to purchase drugs and blunt cigars. He removed the tobacco, replaced it with marijuana, and then shared the blunt with S.M. When asked, S.M. stated she participated in smoking the marijuana because she wanted "to make [defendant] feel comfortable with me."

Eventually, defendant untied S.M. and permitted her to sit in the front seat. The two continued to drive to various spots, again smoked marijuana, withdrew another $500 from S.M.'s bank account and picked up defendant's bicycle which he had left at the Walgreens. At that time, defendant asked S.M. to drop him off at Finchley Boulevard, which she did and drove away. S.M. called her boyfriend, who suggested she dial 911. Police responded, took S.M.'s statement and accompanied her to a hospital for a sexual assault examination.

(ECF No. 24-1, at 3–5 (alteration in original).)

Petitioner was arrested October 14, 2004 by the United States Marshals Fugitive Task Force on a fugitive warrant from Virginia. (ECF No. 8-5, at 40.) Petitioner was arrested at his sister's residence, which police later searched with the consent of Petitioner's brother-in-law. (*Id.* at 39–40.) Upon arrest, Petitioner was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). (ECF No. 8-5, at 40.) Petitioner told officers that he could not read or write but advised that he did understand his rights. (*Id.*) Petitioner was taken to the Ocean County Sheriff's Identification Bureau, where he was informed by Investigator Kenneth Hess of the Ocean County

Prosecutor's Office of the investigation into the assault of S.M. and the charges against Petitioner. (*Id.* at 41.) Investigator Hess asked if Petitioner was willing to respond to questions about the allegations. (*Id.*) Petitioner thereafter reviewed and signed a waiver of rights form and advised the investigator that "he could read the English language and write." (*Id.* at 42.) Investigator Hess then proceeded to question Petitioner about the charges and Petitioner made several inculpatory oral statements. (*Id.* at 43.) Specifically, Petitioner allegedly described the incident in detail, including stating that he "used a knife because [he] didn't know how to get her into the car without her screaming." (ECF No. 8-16, at 5.) Petitioner also stated

> that he was scared that someone would see him while he was walking her to the car with the knife around her neck. He also acknowledged that he was nervous while attempting to open up her car door and that he fumbled with the keys. He admitted [to the officer] that he tied the victim up in the back seat . . . [but] he claimed that he didn't tie the knot very tight."

(*Id.* at 5–6.) Petitioner thereafter described the sexual assault in detail, stating that he performed oral sex on S.M. before performing vaginal and anal intercourse. (*Id.*) Petitioner "advised [the officer] that the victim asked him to stop on more than one occasion, repeatedly." (*Id.*)

Prior to trial, a hearing was held to determine the admissibility of Petitioner's custodial statement pursuant to *Miranda*. (ECF Nos. 8-2, 8-3, 8-4, 8-5.) Petitioner argued that his custodial statement was not admissible because his waiver of his *Miranda* rights was not knowing and voluntary. (ECF No. 8-5, at 10–11.) More specifically, Petitioner argued that he was not properly informed of the charges against him and that he lacks the reading comprehension skill "necessary to understand and knowingly, intelligently waive [his *Miranda*] rights and voluntarily waive the rights that were read to him." (*Id.* at 32.) The court rejected Petitioner's argument and deemed that his custodial statements would be admissible at trial. (*Id.* at 44–46.) Indeed, the court found that not only can Petitioner read and write, but also that he "did and does know his rights, and has

the intelligence capacity to understand and waive them." (*Id.* at 45.)

At trial, S.M. testified and, on her cross-examination, defense counsel highlighted "inconsistencies and exaggerations" in her testimony:

> For example, she informed the 911 operator defendant had a gun and a knife, when she knew he did not possess a gun. Also, she did not tell the responding officer she was tied with socks but told another officer the socks that were used to bind her came from defendant's feet. S.M. was vigorously questioned on why she had not attempted to escape after defendant freed her hands and feet; why she did not run for help to a friend's nearby home located at one area where defendant stopped; whether she knew defendant; why she spoke to a male friend at 10:30 p.m. but did not reveal her circumstances; and asked to explain how defendant removed her clothing to perform the sexual acts if she was bound as she described.

(ECF No. 24-1, at 26.) The State also presented as witnesses at trial S.M.'s boyfriend, the 911 operator, the nurse who performed the sexual assault exam, and the investigating police and sheriff's officers and detectives; and additionally admitted as evidence records of the withdrawals from S.M.'s bank account, her cell phone records, video surveillance from Walgreens, S.M's hospital records, lab reports verifying the presence of Petitioner's fingerprints in S.M.'s car, and Petitioner's custodial statement. (*Id.* at 27.)

Petitioner's defense at trial was that he and S.M. had a prior relationship and that the sexual encounter was fully consensual. Petitioner's case at trial included testimony from two Lakewood Police Department detectives, specifically Detective Sherry Ann Jones, who interviewed S.M. at the hospital immediately following incident, and Detective Stephen W. Wexler, who was involved in the interrogation of Petitioner and whom Petitioner alleged "roughed him up." (ECF No. 24-1, at 7.) Petitioner did not testify on his own behalf.

The jury ultimately found Petitioner guilty of the lesser-included offense of second-degree kidnapping, second-degree carjacking, second-degree burglary, the lesser included offense of

second-degree robbery, aggravated sexual assault, and second-degree sexual assault. (*Id.*)[1] The State moved to impose an extended term sentence, which was granted. (*Id.* at 8.) Petitioner was ultimately sentenced to an aggregate thirty-year term of imprisonment subject to the No Early Release Act. (*Id.*)

Petitioner filed an appeal to the Superior Court of New Jersey, Appellate Division. (ECF No. 18-1.) In an unpublished opinion dated July 29, 2011, the Appellate Division affirmed his conviction and sentence. (ECF No. 24-1.) Petitioner filed a petition for certification to the New Jersey Supreme Court, which was denied on January 13, 2012. *State v. Calhoun*, 35 A.3d 680 (N.J. 2012).

Petitioner thereafter filed a petition for post-conviction relief ("PCR") on or about January 30, 2012. (ECF No. 18-5, at 143–44.) Following oral argument, Petitioner's PCR was denied without an evidentiary hearing. (ECF No. 8-21.) Petitioner filed an appeal to the Appellate Division, which, in an unpublished opinion, affirmed the decision of the PCR Court. (ECF No. 8-23.) The New Jersey Supreme Court denied certification on November 6, 2015. *State v. Calhoun*, 125 A.3d 391 (N.J. 2015).

On or about July 7, 2016, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The Petition sets forth the following grounds for relief:

> Ground One: The coercive effect of the colloquy between the court
> and the jury foreperson after an *Allen*-type instruction, violated
> defendant's [rights under the] Sixth and Fourteenth Amendments.

---

[1] The indictment had charged defendant with first-degree kidnapping, N.J.S.A. § 2C:13-1(b); carjacking, N.J.S.A. § 2C:15-2; second-degree burglary, N.J.S.A. § 2C:18-2; armed robbery, N.J.S.A. § 2C:15-1; third-degree theft, N.J.S.A. 2C:20-3; two counts of aggravated sexual assault, N.J.S.A. §§ 2C:14-2(a)(3), 2C:14-2(a)(4); second-degree sexual assault, N.J.S.A. § 2C:14-2(c)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. § 2C:39-4d; and fourth-degree unlawful possession of a weapon, N.J.S.A. § 2C:39-5(d). (ECF No. 24-1, at 5–6.)

> Ground Two: Defendant's waiver of *Miranda* rights was not voluntary, knowing and intelligent, and was rather an ambiguous invocation of his right to silence, violating defendant's [rights under the] Fifth and Fourteenth Amendments.
>
> Ground Three: Defendant was denied the effective assistance of counsel, violating [his rights under the] Sixth and Fourteenth Amendments.
>
> Ground Four: Defendant was denied the effective assistance of appellate counsel, violating [his rights under the] Sixth and Fourteenth Amendments.
>
> Ground Five: Defendant was denied the right to due process and a fair trial due to the accumulation of errors in this case.

(ECF No. 2-1, at 22–25.) In Ground Three, Petitioner alleges eight claims of ineffective assistance of counsel. (*Id.*) Respondents argue that Petitioner's claims all lack merit and that Petitioner has failed to show a denial of any federal right. (ECF No. 8.)

Following Respondents' filing of their Answer, Petitioner filed a motion to compel Respondents to provide Petitioner with a copy of the transcript from the grand jury proceeding, which he argued was essential to the resolution of the claims raised in the Petition. (ECF No. 17.) Petitioner also sought to compel Respondents to provide copies of all briefing from the state court proceedings, which was omitted from their Answer. (*Id.*) Respondents complied with Petitioner's request for the state court briefing, but objected to Petitioner's request for the grand jury transcript. (ECF No. 18.) This Court denied the motion to compel, finding that the grand jury transcripts were not essential to resolving his claim that his counsel was ineffective for failing to move to dismiss the indictment. (ECF No. 22).

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 2254(a), a court may consider a claim alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a).  A habeas petitioner has the burden of establishing each claim in such a petition.  *See Eley v. Erickson*, 712 F.3d 837, 846–47 (3d Cir. 2013).  Generally, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).

Under § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244, ("AEDPA"), federal courts must give considerable deference to determinations of the state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766, 772 (2010).  Where a state court adjudicated a petitioner's federal claim on the merits, a federal court

> ha[s] no authority to issue the writ of habeas corpus unless the [state court's] decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)).  As an *unreasonable* application of federal law is distinguishable from a merely *incorrect* application of federal law, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  *Renico*, 559 U.S. at 773 (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)).  The Supreme Court has noted that the habeas standard creates a "'substantially higher threshold' for obtaining relief than *de novo* review."  *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

"For the purposes of Section 2254(d), a claim has been adjudicated on the merits in State court proceedings when a state court has made a decision that 1) finally resolves the claim, and 2) resolves that claim on the basis of its substance, rather than on a procedural, or other, ground."  *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (internal quotation marks and brackets omitted).

"[C]learly established law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). A decision is "contrary to" a Supreme Court holding for the purposes of § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams*, 529 U.S. at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. In conducting a review under § 2254(d)(1), a court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of AEDPA necessarily apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. DISCUSSION

Before reaching the merits of the Petition, the Court notes that several of the claims appear to have not been raised at all levels of state court review and are, thus, unexhausted. *See* 28 U.S.C.

§ 2254(b)(1)(A) (requiring a petitioner to exhaust "the remedies available in the courts of the State" before seeking relief in federal court); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Respondents did not raise exhaustion in their Answer as an affirmative defense. While the Court may raise the issue of exhaustion *sua sponte*, *see United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (Nygaard, J., concurring), it declines to do so here and will instead deny the Petition on the merits pursuant to 28 U.S.C. § 2254(b)(2), *see Mahoney v. Bostel*, 366 F. App'x 368, 371 (3d Cir. 2010).

## A. Ground One – Right to an Impartial Jury

In Ground One of the Petition, Petitioner asserts that his right to an impartial jury under the Sixth and Fourteenth Amendments was violated by the trial court's *Allen*[2] instruction to the jury. It appears that after two days of deliberation, the jury advised the trial court that it was at an impasse and did not believe it could not come to unanimous decision. (ECF No. 8-19, at 5.) Following a discussion with counsel, the trial court gave the following supplemental instruction to the jury:

> The verdict must represent the considered judgment of each juror. In order to return a verdict it is necessary that each juror agree thereto. Your verdict must [be] unanimous. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.
>
> In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not partisans,

---

[2]     *Allen v. United States*, 164 U.S. 492 (1896).

you are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

(*Id.* at 9.) Thereafter, the following exchange occurred between the trial judge and the jury foreperson:

> THE COURT: The Court will be asking you to return again to the jury room just to further your deliberations. It is about lunchtime. The Court will inquire from you whether you intend to work through lunch or would you like to take a lunch break and return at 1:30 for further deliberations. If you need time to talk and, just give me a note. I'd appreciate it.
>
> Or if you know the answer now, Foreperson.
>
> THE FOREPERSON: Your Honor, it seems like we are not going to come to –
>
> THE COURT: Lunch break or –
>
> THE FOREPERSON: Sorry. We didn't talk about that.
>
> THE COURT: That's what I'm asking you. I'm going to ask you to go back in and let me know that. If you want to continue through lunch, I'll accommodate you. And if you want to break, let me know. You can return and I'll wait for your decision.

(*Id.* at 9–10.) Ultimately, the jury broke for lunch and later that afternoon returned a unanimous guilty verdict. (*Id.* at 10, 13–16.) Petitioner contends that the trial court's response to the foreperson's statement "steamrolled over the foreperson's objection" and coerced the jury to reach a verdict. (ECF No. 2-1, at 23.)

Petitioner raised this claim to the Appellate Division on direct appeal. The Appellate Division determined that the foreperson's response to the court was not an objection to further deliberations but instead merely a misunderstanding of the court's question as to a lunch break. (ECF No. 24-1, at 12.) Thus, the Appellate Division held that the trial judge's response to the foreperson had no coercive effect on the jury. (*Id.*) Moreover, the Appellate Division found that

the trial court's instructions to the jury were "balanced and unremarkable, properly directing the jurors to re-examine their personal positions as they attempted unanimity." (*Id.*)

In *Allen*, 164 U.S. at 501–02, the Supreme Court upheld the use of a supplemental jury instruction to a deadlocked jury to continue deliberations, observing that such charges were in accordance with "the very object of the jury system . . . to secure unanimity by a comparison of views." Such charges to the jury have become known as "*Allen*-charges," and a court's review of the coercive effect of such a charge is to be considered "in its context and under all the circumstances." *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988) (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)); *see also United States v. Fioravanti*, 412 F.2d 407 (3d Cir. 1969) (considering whether an *Allen* charge in "the context in which it was presented" was "so prejudicial as to deprive appellant of a fair trial and a unanimous verdict based on proof beyond a reasonable doubt"). The Third Circuit has indicated "that a charge would not be coercive if it contained language urging jurors to reconsider their own view but not to surrender their honest convictions solely because of other jurors' opinions, or for the mere purpose of returning a verdict." *Rutherford v. Hendricks*, No. 02-3131, 2005 WL 1541063, at *9 (D.N.J. June 30, 2005) (citing *Fioravanti*, 412 F.3d at 420 n.32). In *Jenkins*, 380 U.S. 445, the Supreme Court provided a useful example of what renders an instruction coercive. In that case, the Supreme Court invalidated a conviction where the trial court instructed the jury that it had "to reach a decision in this case." *See id.* at 446.

No such coercion occurred here. Petitioner does not take issue with the Court's charge to the jury to continue its deliberations—Petitioner takes issue only with the trial court's response to the jury foreperson's statement that he did not believe the jury would be able to reach a verdict. The Appellate Division's holding that the Court's response was not coercive was not contrary to

this established federal law.  In responding to the jury foreperson's statement, the trial court did

not demand the jury to reach a verdict—he simply clarified his question as to whether the jury

wanted to take a lunch break before continuing deliberations in accordance with the supplemental

charge.  This did not "steamroll" the foreperson as suggested by Petitioner as it was not the

province of the foreperson to determine whether continued deliberations in light of the

supplemental instruction were futile.  Courts routinely utilize supplemental charges to give

"deadlocked" juries a final opportunity to deliberate and reach a verdict.  *See Lowenfield*, 484 U.S.

at 237.  The trial court here did not demand a verdict nor was the effect of its conduct "to force the

jury's hand or move the jury in a certain direction with respect to the deliberation process."

*Rutherford*, 2005 WL 1541063, at *9.  Relief on this claim is thus denied.

## B.  Ground Two – Waiver of *Miranda* Rights

Petitioner next argues that his custodial statement should not have been admitted at trial

because his waiver of his *Miranda* rights was not knowing and intelligent.  (ECF No. 2-1, at 3–5.)

Petitioner additionally argues that he did invoke his right to remain silent by circling the "rights"

portion of the *Miranda* waiver form he signed before he was interviewed by Investigator Hess.

(*Id.*)[3]  Petitioner raised these issues in his pro se supplemental brief on direct appeal, but the

Appellate Division affirmed the admission of the custodial statement on other grounds.  (ECF No.

24-1, at 13–15.)  Instead, the Appellate Division addressed Petitioner's appellate argument that he

could not have knowingly and voluntarily waive his *Miranda* rights because "he was not advised

an arrest warrant had issued."  (*Id.* at 14.)  In that respect, the Appellate Division determined that

---

[3]     Petitioner also alleges there were several discrepancies in the testimony presented at the
*Miranda* hearing, but fails to relate those factual issues to his arguments that he lacked the
intelligence to knowingly waive his *Miranda* rights and that his circling of the "rights" section of
the waiver form was an unambiguous assertion of those rights.  Therefore, the Court will not treat
them as separate arguments.

the trial court's finding that Petitioner "was properly advised of his rights; that he knew and understood them probably better than most college graduates; and that he intelligently and voluntarily waived them, . . . was based on substantially credible evidence in the record and will not be disturbed." (*Id.* at 15.)

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination. *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964). In *Miranda v. Arizona*, the United States Supreme Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467 (1966). Pursuant to *Miranda* and its progeny, "suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *See Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (citing *Miranda*, 384 U.S. at 444).

"When police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief." *Oregon v. Elstad*, 470 U.S. 298, 317 (1985). Conversely, a waiver of the right to remain silent renders self-incriminating, inculpatory statements admissible, and such waiver may be made orally, in writing, or even implied by the interrogated person's conduct. *See North Carolina v. Butler*, 441 U.S. 369, 374–376 (1979). Correspondingly, a trial court can properly admit a defendant's inculpatory statements if the court finds that the government met its preponderance-of-the-evidence burden of showing that the

statements were made with a valid waiver of *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986).

The question of whether the waiver at issue was "valid" is resolved on a case-by-case basis. Under *Miranda*, a waiver is valid if it is made "voluntarily, knowingly and intelligently." 384 U.S. at 475. In determining whether there has been a valid waiver of *Miranda* rights, a court must conduct a two-part inquiry ensuing from the "totality of the circumstances" test. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the court looks to the voluntariness of the waiver in order to determine whether it was made "freely," as opposed to being obtained by coercion. *See id.* Second, the court must consider whether the waiver was made "knowingly and intelligently," in the sense that the accused was fully aware "both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

The Court construes the Petition as raising two separate challenges to the admission of Petitioner's custodial statement: (1) that Petitioner's circling of the "rights" section of the *Miranda* waiver form constituted an unambiguous invocation of rights and (2) that Petitioner lacked the mental competence to effectuate a knowing and intelligent waiver of his *Miranda* rights.

First, Petitioner cannot show any unambiguous invocation of his right to silence. A defendant's waiver of *Miranda* rights must be "unambiguous," meaning it must be "sufficiently [clear] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 458 (1994); *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (extending *Davis* to require waivers of a defendant's right to silence be "unambiguous"). Indeed, "[i]f an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda*

rights." *Berghuis*, 560 U.S. at 381. Petitioner's circling of the "rights" section of the waiver form was insufficient to invoke either his right to silence or his right to counsel. Petitioner never said that he wished to remain silent nor did he indicate that he did not want to talk to police. *See id.* A reasonable police officer would not have understood Petitioner's circling of a section of the waiver form as any indication that the accused was seeking to invoke his rights. And, after Petitioner signed the form, he continued to talk to police further contradicting his position that he intended to invoke his rights by circling that section of the form. Petitioner has not shown that he unambiguously invoked his *Miranda*.

Petitioner's argument that he lacked the mental capacity to waive his *Miranda* rights also lacks merit. At the *Miranda* hearing, Petitioner presented expert testimony to support his argument "that by academic standards and comprehension standards [Petitioner falls] below the comprehension level necessary to understand and knowingly, intelligently waive the rights and voluntarily waive the rights that where read to him." (ECF No. 8-5, at 32.) Indeed, the expert testified that Petitioner has a second-grade reading comprehension level and could not have fully understood the *Miranda* form which was written at a fifth-grade reading level. The trial court rejected this argument, finding "the doctor's testimony totally lacking in credibility, and factually unsupported. Indeed, the words 'psychobabble' and 'poppycock' come to mind." (*Id.* at 46.) In that connection, the trial court found that Petitioner's conduct at the hearing, at which he requested to be uncuffed to permit him to take notes and participate in the case, contradicted the expert's testimony:

> I observed the defendant throughout the first day's proceeding taking notes, taking other written material from his file and constantly interrupting his counsel to call to his attention notes that he had written and the other materials which he thought counsel should pursue.

On the day that Dr. Dougherty appeared to testify, the defendant did not take any notes. And indeed, he didn't request any writing materials, nor did he read anything from his file.

The defendant can read and write. More importantly to the issue at hand, the defendant did and does know his rights, and has the intelligence capacity to understand and waive them. Indeed, he so advised the doctor, who apparently thought it was his role to establish that the defendant didn't know that which he knew.

For example, the defendant told the doctor he was familiar with the system, as indeed he was; that he wanted a lawyer; that he knew he should not talk to the cops or give a statement; and that he never waived his Miranda warnings.

The doctor, as noted, refused to accept this. For example, the doctor testified that the defendant didn't understand the meaning of the word, 'interrogation.' Yet the defendant told him he knew he could answer questions if he wanted to, or not answer questions if he didn't want to. Perhaps the defendant couldn't understand the meaning of the term, 'interrogation,' but he certainly understood his rights.

(*Id.* at 44–46.) Petitioner has not offered this Court any reason to disturb that factual finding. *See* 28 U.S.C. § 2254(e)(1) This Court's review of the record of the *Miranda* hearing demonstrates that Petitioner did, in fact, knowing, intelligently, and voluntarily waive his right to remain silent and his right to counsel during the custodial interrogation. Habeas relief on this claim is denied.[4]

## C. Ground Three – Ineffective Assistance of Trial Counsel

In Ground Three, Petitioner raises several claims related to the ineffective assistance of trial counsel.[5] The Sixth Amendment guarantees the accused the "right . . . to have the

---

[4]     Petitioner additionally alleges that his trial counsel was ineffective for failing to raise the issues discussed above at the *Miranda* hearing -- that trial counsel did not effectively argue that Petitioner had unambiguously invoked his rights by circling the "rights" portion of the *Miranda* form. (ECF No. 1, at 33–35.) Petitioner's claim of ineffective assistance of counsel related to counsel's performance at the *Miranda* hearing is denied because, as evident from this Court's above-analysis, these issues were raised by trial counsel at the hearing and rejected by the trial court.

[5]     In his Reply, Petitioner indicated that he wished to withdraw two of his ineffective assistance claims based on the exhibits provided by Respondents. (ECF No. 19, at 65–66.)

Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  *Id.* at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 669.  To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1088.  On habeas review, it is not enough that a federal judge would have found counsel ineffective.  The judge must find that the state court's resolution of the issue was unreasonable.  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

### 1. Failure to Move to Dismiss the Indictment

Petitioner contends that his counsel was ineffective for failing to move to dismiss the

---

Specifically, Petitioner abandoned his claims related to his counsel's failure to challenge his arrest and the search of his brother-in-law's home based on the arrest warrant and consent to search forms provided by Respondents which demonstrated that both Petitioner's arrest and the search were constitutionally proper.  (*See id.*; ECF Nos. 8-24, 8-25.)  Accordingly, the Court will not address the merits of these withdrawn claims.

indictment against him because it was based upon "wholesale hearsay testimony." (ECF No. 2-1, at 26–27.) Petitioner alleges that the only testimony presented by the State at the grand jury proceedings was through Detective Kenneth Hess of the Ocean County Prosecutor's Office, who testified as to the findings of the Sexual Assault Nurse Examiner's ("SANE") examination of S.M. (*Id.*) The PCR Court rejected this claim, first finding that Petitioner's counsel did in fact move to dismiss the indictment twice prior to trial and that "defense counsel zealously pursued dismissal of the indictment." (ECF No. 8-21, at 81.) Nevertheless, the PCR Court further determined that Petitioner failed to show the first prong of *Strickland* because, under New Jersey law, it is permissible for an indictment to be based on hearsay testimony. (*Id.* at 83.) Finally, the PCR Court noted that any failure to move to dismiss the indictment was "obviated by the jury verdict in this case." (*Id.* at 82–83.)

This Court previously addressed the merits of this claim in its December 18, 2017 opinion denying Petitioner's motion to compel Respondents to produce a copy of the transcript of the grand jury proceedings. *Calhoun v. Bonds*, No 16-4100, 2017 WL 6459801 (D.N.J. Dec. 18, 2017) (ECF No. 22.) This Court noted that the indictment claim had no merit because "the record reflects that Petitioner's counsel sought dismissal of the indictment on two separate occasions, and the governing New Jersey law does <u>not</u> clearly require dismissal of an indictment that is based on hearsay." *Id.* at 7. For the reasons set forth in the Court's prior opinion, habeas relief on this claim is denied.

### 2. Failure to Adequately Advise Petitioner of His Right to Testify

Petitioner next asserts that his counsel was ineffective by failing to properly advise Petitioner of his right to testify on his own behalf at the *Miranda* hearing and, later, at trial. (ECF No. 2-1, at 27–32.)

A criminal defendant has a constitutional right to testify on his or her own behalf. *See generally Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987). Indeed, the Supreme Court has observed that "the most important witness for the defense in many criminal cases is the defendant himself." *Id.* at 52. Defense counsel has a duty to inform a defendant of this right, but a defendant may nevertheless waive it so long as the decision to do so is "knowing and intelligent." *United States v. Pennycooke*, 65 F.3d 9, 11–13 (3d Cir. 1995). "The *Strickland* standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify"; it does not create the sort of structural defect that warrants automatic reversal. *Palmer v. Hendricks*, 592 F.3d 386, 394, 397–98 (3d Cir. 2010) (citation omitted) (quoting *Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir. 2009)). Accordingly, to succeed on his claim that trial counsel's deficient performance violated his right to testify, Petitioner must show both deficient performance and the resulting prejudice. *See Ruiz v. Superintendent Huntingdon SCI*, 672 F. App'x 207, 210 (3d Cir. 2016).

### a. The *Miranda* Hearing

Petitioner alleges that his trial counsel never advised him that he could testify at the pretrial *Miranda* hearing. (ECF No. 2-1, at 27.) Petitioner contends that had he known he could testify at the *Miranda* hearing, he would have testified that during the interrogation, Detective Wexler came into the interrogation room and "roughed him up." (*Id.*) Detective Wexler testified at the *Miranda* hearing and stated that he did not recall being in the interrogation room at any point during Petitioner's interrogation. (ECF No. 8-3, at 17.)

This claim was denied by the PCR Court as unsupported by the record. The PCR Court pointed to statements made by trial counsel at the *Miranda* hearing regarding the potential for Petitioner to testify on his own behalf at the hearing. (ECF No. 8-21, at 44.) Indeed, the PCR

Court noted that trial counsel had mentioned the potential for Petitioner to offer testimony at the hearing on the record, indicating that Petitioner "was clearly on notice that he had the option of testifying during the course of the suppression hearing" and that any decision for Petitioner not to testify was "for tactical, strategic reasons that make complete sense." (*Id.*) Ultimately, the PCR Court held that the bald assertions by Petitioner that he did not know he could have testified at the *Miranda* hearing were contrary to the record and did not entitle Petitioner relief. (*Id.*) The Appellate Division affirmed the decision of the PCR Court, additionally finding that Petitioner could not show he was prejudiced by any failure of counsel to advise him of his right to testify at the *Miranda* hearing. (ECF No. 8-23, at 20.)

This Court will not disturb that holding. Petitioner has offered no evidence except his own bald assertions to support his claim that his counsel did not advise him of his right to testify at the *Miranda* hearing. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991). As the PCR Court and Appellate Division both observed, Petitioner's claim that his counsel never told him he could testify at the *Miranda* hearing was contradicted by the record. (ECF No. 8-21, at 44; ECF No. 8-23, at 20.) Because Petitioner has not presented clear and convincing evidence to rebut this factual finding, 28 U.S.C. § 2254(e)(1), he cannot demonstrate that his counsel was deficient under the first prong of *Strickland*. Accordingly, he is not entitled to habeas relief on this claim.

### b. Testimony at Trial

Petitioner additionally contends that his trial counsel's ineffectiveness deprived him of his right to testify at trial. Petitioner alleges that his counsel advised him that if he testified at trial, the State would "be able to question him regarding the specifics of similar, previous [sexual assault] convictions arising out of Virginia." (ECF No. 2-1, at 28.) Indeed, following the trial judge's colloquy with Petitioner regarding his decision not to testify, Petitioner's trial counsel

asked him the following questions:

> [DEFENSE COUNSEL]: James, we have discussed this for over two years, your decision as to whether or not to testify. Is that right?

> THE DEFENDANT: Yes.

> [DEFENSE COUNSEL]: And all along I have been suggesting to you that you do not testify?

> THE DEFENDANT: Yes.

> [DEFENSE CO9UNSEL]: Is that accurate?

> THE DEFENDANT: Yes.

> [DEFENSE COUNSEL]: And you are aware that the State filed a 404(b) motion regarding an incident and prior conviction in Virginia?

> THE DEFENDANT: Yes.

> [DEFENSE COUNSEL]: We were successful in having that motion denied, correct?

> THE DEFENDANT: Yes.

> [DEFENSE COUNSEL]: You understand that if you took the witness stand, [the prosecutor] would have a field day with the prior indictment in Virginia?

> THE DEFENDANT: Yes.

> [DEFENSE COUNSEL]: Which is a sexual charge for which you plead guilty to?

> THE DEFENDANT: Yes.

> [DEFENSE COUNSEL]: And you understand if the jury found that out we would be paddling upstream, so to speak, without a paddle, because we think, or at least I think if they found out about Virginia, there wouldn't be any question in their mind about the evidence in this case. They would basically think, if it happened once, it would happen again. Are those the sum and substantive of our conversations?

> THE DEFENDANT:  Yes.
>
> [DEFENSE COUNSEL]:  And you are making this decision based on my advised and your understanding of the case?
>
> THE DEFENDANT:  Yes.

(ECF No. 8-16, at 48–49.)

The PCR Court found that Petitioner's trial counsel was deficient in advising him that if he testified the details of the Virginia conviction would be admissible, but ultimately held that because Petitioner could not show any prejudice resulting from this deficiency, he was not entitled to relief. (ECF No. 8-21, at 45–48.)  The PCR Court determined that the first prong of *Strickland* was met because trial counsel's advice to Petitioner regarding the admissibility of the details of the Virginia conviction was incorrect—the State could have only admitted sanitized evidence of the conviction and not the details of the conduct underlying the conviction.  (*Id.* at 45.)  Nevertheless, the PCR Court, after a thorough review of the evidence presented at trial, determined that Petitioner could not demonstrate he was prejudiced by trial counsel's deficient performance.  (*See id.*)  The PCR Court observed that had Petitioner testified and a sanitized version of the conviction been admitted, it could not

> come to the conclusion that even if the defendant had taken the stand and claimed that he knew the [victim] prior to this assault; that he was familiar with her residence, even the interior of the residence, that this was consensual that the jury would have found that credible in the face of the overwhelming evidence . . . which was presented by the State.
>
> The Court cannot come to the conclusion that the result of the proceeding would have been different . . . that there was a reasonable probability that there would have been a difference outcome of the proceeding.

(ECF No. 8-21, at 48.)

The Appellate Division agreed with the PCR Court's holding in its entirety, further noting

that Petitioner's testimony "lacked corroborating evidence and it was seriously undermined" by other testimony that was presented at trial. (ECF No. 8-22, at 16.) The Appellate Division observed that "[d]efendant's entirely uncorroborated testimony would also not have persuaded the jury to reach a different verdict, particularly since defendant's credibility would have been undermined by cross-examination, revealing his substantial criminal history, notwithstanding that the offenses would have been sanitized." (*Id.* at 16.) Moreover, the Appellate Division determined that defendant's theory of the case—that the encounter with S.M. was consensual and that Petitioner knew the victim prior to the incident—was presented to the jury by trial counsel through his examination of the State's witnesses, including his cross-examination of the victim in which he sought to elicit testimony "to suggest defendant had been in a relationship with the victim, and had been to the victim's home." (*Id.* at 16.)

The state courts' application of the *Strickland* standard was not unreasonable nor contrary to established federal law. Petitioner has not demonstrated that he was prejudiced by his counsel's failure to properly advise him on his right to testify and what evidence the State could admit had he taken the witness stand. "In determining whether counsel's failure to present potentially exculpatory evidence," *i.e.* Petitioner's testimony, "was prejudicial, a reviewing court cannot merely determine whether there was sufficient evidence for a conviction at the time of trial, but instead must weigh the evidence as a whole and consider the potential impact of the previously unpresented evidence." *Ruiz*, 672 F. App'x at 210. As the Appellate Division determined, the testimony Petitioner alleges he would have given at trial was presented to the jury through other means. This Court will defer to the state court's findings. Petitioner has offered no evidence to rebut the Appellate Division's finding that the outcome of trial would not have differed had Petitioner testified on his own behalf. Relief on this claim is denied.

### 3. Failure to Present a Defense

Petitioner next asserts that his trial counsel was ineffective because he failed to call any witnesses on Petitioner's behalf, despite Petitioner's request that counsel do so. (ECF No. 2-1, at 86.) More specifically, Petitioner submits that his counsel was ineffective for failing to call S.M.'s mother as a witness at trial as part of his defense that he knew the victim prior to the incident. (*Id.*) The PCR Court denied this claim because Petitioner's trial counsel had expressed at trial that he did not call S.M.'s mother for strategic reasons. (ECF No. 8-21, at 43.) Indeed, trial counsel set forth his strategic reasons for not calling S.M.'s mother on the record at trial:

> But from a strategic point of view, I'm not going to call her for two or three reasons. One is, if I haven't made a fool of myself in front of this jury by screaming at certain witnesses during my heated cross-examination, this jury would hate me and then hate Mr. Calhoun if I called the victim's mother after grilling the victim for over two and a half hours on cross-examination.
>
> Number two, the damage, if any, has been done. And I think I've dealt with it as best that I can do. And I don't want to reopen the issue of how the interior of the home came to my client's attention. Nor give [the State] the opportunity to take that issue any further and get more damaging information.

(ECF No. 8-16, at 47.) Trial counsel also explained that he believed there existed procedural issues by calling her as a witness as (1) she had not been included on Petitioner's pretrial witness list and (2) she had been present in the courtroom for a "good portion of trial." (*Id.* at 47–48.) Because the PCR Court found this to be a sound trial strategy, it held that counsel was not ineffective. (ECF No. 8-21, at 43.) The Appellate Division held that the PCR Court's finding was supported by the record. (ECF No. 8-22, at 8.)

The PCR Court's resolution of this claim was not unreasonable nor contrary to federal law. Petitioner has not demonstrated that his trial counsel was deficient under the first prong of *Strickland* for not calling S.M.'s mother. It is well-accepted that "strategic choices made after

thorough investigation of law and facts . . . are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Petitioner's trial counsel presented a sound trial strategy reason for not calling S.M.'s mother—her testimony might have hurt Petitioner. And, even if it was unreasonable for counsel not to call this witness, Petitioner cannot show he was prejudiced in any way. He has not presented any information or sworn statement from S.M.'s mother as to what her testimony at trial would have been and whether that testimony would have changed the ultimate outcome at trial. *See Duncan v. Morton*, 256 F.3d 189, 201 (3d Cir. 2001) (denying ineffective assistance of counsel claim for failure to interview or call a potential witness where petitioner failed to present any sworn testimony from the witness as to what his testimony would have been). Because Petitioner's claim fails on both prongs of *Strickland*, habeas relief on this claim is denied.

### 4. Failure to Object to the State's Summation

Petitioner argues that his counsel was ineffective for failing to object to statements made by the prosecutor during the State's summation, which, according to Petitioner, (1) shifted the burden of proof to Petitioner; (2) used the personal "I" pronoun throughout the summation;[6] (3) suggested that defense counsel behaved improperly in cross-examining the victim; and (4) vouched for the credibility of the State's witnesses.[7] (ECF No. 19, at 100–10.) The PCR Court

---

[6]     For example, Petitioner objects to the following statements of the prosecutor in which he used the "I" pronoun: (1) "Do I wish that the CIU detective had done a better job? Absolutely. But I'm forced to deal with the evidence that I have"; and (2) "I wish I had a tape to show you [of the custodial interview of Petitioner]." (ECF No. 2-1, at 36.)

[7]     Petitioner points to the following statement of the prosecutor in support of his allegation that the prosecutor improperly vouched for the credibility of the State's witnesses:

> And this whole thing with the *Miranda* rights, was it knowing? Was it voluntary? He circled the first part. He circled it, [yet] then he signed it. And he spoke. And when he spoke, he spoke at his own peril. Investigator Hess didn't sit there and give him the details of the case and say, okay, I have a confession, and then come in here

denied this claim, holding that even if trial counsel should have objected to any part of the summation, Petitioner had not demonstrated "a reasonable probability of a different outcome" had counsel raised those objections.  (ECF No. 8-21, at 48–49.)

Prosecutors are "entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence."  *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991).  Where a petitioner claims that remarks by the prosecutor in summation violated his constitutional rights, "the appropriate inquiry is whether such remarks, in the context of the entire trial, were sufficiently prejudicial to violate the defendant's due process rights."  *Id.* (quoting *United States v. Scarfo*, 685 F.2d 842, 849 (3d Cir. 1982)).

The determination of the PCR Court that Petitioner cannot show he was prejudiced by his counsel's failure to object to the prosecutor's summation was neither unreasonable nor contrary to established federal law.  First, trial counsel did, in fact, raise two of Petitioner's objections to the summation at trial.  Following the State's summation, trial counsel put on the record objections to the summation, specifically noting that

> There were numerous times during the closing that I think [the prosecutor] overstepped his bounds regarding the criticism of the defense in and of itself.  And perhaps impermissibly suggested to

> and lie.  The police don't do that in the real world.  And Investigator Hess didn't do that in this case.  That simply did not happen.

(ECF No. 2-1, at 37 (alteration in original).)  Petitioner additionally challenges the prosecutor's statement that

> [i]f you believe Inv. Hess – which I respectfully submit to you that you should because counsel told you that he is the best witness he's ever seen.  He is confident and he is credible, which he is.  What does he tell you?  He tells you that the defendant confessed.  Why in the world would Investigator Hess come in here and say anything to you that's not true?

(*Id.*)

the jury that the defendant had a burden to produce or do anything
with regard to the case. I think it was so egregious that . . . it
probably amounts to me requesting a mistrial.

(ECF No. 8-17, at 32.) The trial court denied that request for a mistrial. (*Id.* at 33.) Counsel

cannot be deemed ineffective for not raising an objection at trial that was, in fact, raised.

Moreover, this Court agrees with the PCR Court's determination that had counsel objected

to the prosecutor's other allegedly improper statements the outcome of trial would not have

changed. The comments made by the prosecutor were within the wide latitude afforded the State

in summarizing the evidence. The prosecutor's comments regarding the credibility of the

witnesses did not cross the line into vouching because his comments were based only on evidence

in the record. *See State v. Walden*, 851 A.2d 758, 764–65 (N.J. Super. Ct. App. Div. 2004) ("A

prosecutor may argue that a witness is credible, so long as the prosecutor does not personally vouch

for the witness or refer to matters outside the record as support for the witness's credibility."); *see*

*also United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006). Perhaps more critically, the jury

was duly instructed that "remarks by one counsel or another . . . are not evidence and are not to be

considered by you in any way." (ECF No. 8-17, at 37.) The jury is presumed to have followed

the judge's instructions to it. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). The PCR Court's

resolution of this claim was not unreasonable in light of the latitude afforded to the State in

summarizing the evidence and the instruction to the jury that it could not consider such remarks

as evidence. Accordingly, relief on this claim is denied.

### 5. Cumulative Ineffective Assistance of Counsel

Petitioner also brings a claim for cumulative ineffective assistance of counsel. The Third

Circuit has recognized that "errors that individually do not warrant habeas relief may do so when

combined." *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008). Cumulative errors of counsel may entitle a petitioner to habeas relief where "they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Albrecht*, 485 F.3d at 139. Petitioner is not entitled to relief for cumulative ineffective assistance of counsel as he cannot demonstrate he suffered actual prejudice as a result of any alleged deficiency of trial counsel.

### D. Ineffective Assistance of Appellate Counsel

Petitioner next claims that his appellate counsel was ineffective for failing to raise all the claims set forth in his PCR Petition. (ECF No. 2-1, at 40.) Claims of ineffective assistance of appellate counsel are determined under the two-pronged *Strickland* standard. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Nevertheless, it is well-established that it is the province of counsel to decide what issues to raise on appeal and counsel is not required to raise every possible claim. *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). "Indeed, the 'process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Id.* (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)). Relatedly, appellate counsel is not ineffective for failing to raise meritless arguments on appeal. *See United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000) (noting that if a claim "is not meritorious, the defendants can not successfully argue that counsel's failure to raise the claim on direct appeal denied them their constitutional right of representation"). Petitioner is not entitled to relief on this claim. Petitioner has not demonstrated that any of the claims he asserts appellate counsel should have raised on direct appeal are meritorious. Accordingly, he is not entitled to relief on this claim.

### E. Cumulative Error

Finally, Petitioner alleges that he was denied his due process right to a fair trial "due to the accumulation of errors in this case." (ECF No. 2-1, at 40.) The Third Circuit has determined that "[i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Fahy*, 516 F.3d at 205. To be entitled to relief for cumulative error, a petitioner is required to demonstrate "actual prejudice." *Id.* (quoting *Albrecht v. Horn*, 471 F.3d 435, 468 (3d Cir. 2006), *vacated and superseded*, 485 F.3d 103 (2007)). Petitioner has not made this showing. He has not demonstrated that any errors that may have occurred at trial undermined the fairness of trial nor has he demonstrated that he was actually prejudiced by any error. Accordingly, this claim is denied.

## V.     CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree that the Petition lacks merit, a certificate of appealability is denied.

## VI.    CONCLUSION

For the foregoing reasons, the Court denies the Petition with prejudice and denies a

certificate of appealability.  An appropriate order follows.


DATED:        March 19, 2019


/s/ Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge